# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| SHARON LYONS *et al.*, | |
| Plaintiffs, | No. 20-cv-03412 |
| v. | Judge John F. Kness |
| CITY OF CHICAGO *et al.*, | |
| Defendants. | |

## ORDER

Defendants' motions to dismiss [37] [40] are denied. See accompanying Statement for details.

## STATEMENT

### I.    Background

Plaintiffs are a mother/grandmother (Sharon Lyons), her son (Terry Lyons), and her juvenile granddaughter (Lillie Savage, represented by her father, Timothy Lyons). (Dkt. 27 ¶¶ 16-18 (Amended Complaint).) Defendants are the City of Chicago and several Chicago police officers. (*Id.* ¶¶ 20-22.) Plaintiffs brought this suit in June 2020 after an incident earlier in the year in which Defendant officers executed a search warrant of Plaintiffs' home. The warrant was obtained based on information received from a police informant that a person named "Blondie" was selling drugs out of Plaintiffs' apartment, but the officers failed to "independently verify or corroborate" the accuracy of the informant's tip. (*Id.* ¶ 11.) According to Plaintiffs, the Defendant Officers' "actions toward Ms. Lyons and her family were the avoidable product of another sloppy search warrant investigation, and their display of excessive force violated the family's Fourth Amendment constitutional rights." (*Id.* ¶ 12.)

In their amended complaint, Plaintiffs brought a § 1983 *Monell* claim (Count I, against Defendant City of Chicago), a § 1983 unlawful search/invalid warrant claim (Count II), a § 1983 unlawful search/unreasonable manner of entry and search claim (Count III), a § 1983 unconstitutional seizure of property claim (Count IV), a state-

law assault claim (Count V), a state-law intentional infliction of emotional distress (IIED) claim (Count VI), a state-law trespass claim (Count VII), and claims for *respondeat superior* (Count VIII) and indemnification (Count IX).

## II.    **Discussion**

Before the Court are Defendants' motions to dismiss (Dkts. 37, 40.) For the reasons given below, Defendants' motions to dismiss are denied.

As a preliminary matter, many of Defendants' arguments cite to caselaw in the summary judgment context, and many of Defendants' arguments are better suited for that stage of litigation. But the Court is addressing Defendants' motions to dismiss. At the motion-to-dismiss stage, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, to the extent that Defendants argue the existence of a warrant justifies dismissal, the Defendants raise an affirmative defense. But the motion-to-dismiss stage is ordinarily not the appropriate time to address defenses. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim. The mere presence of a potential affirmative defense does not render the claim for relief invalid. Further, these defenses typically turn on facts not before the court at that stage in the proceedings").

Defendants raise two general arguments in their motions. First, Defendant Officers argue that many of Plaintiffs' claims should be dismissed under the doctrine of qualified immunity. Dismissing a § 1983 suit at the motion to dismiss stage on qualified immunity grounds is a " 'delicate matter'; on the one hand, qualified immunity is a defense to suit rather than just liability, and should be addressed as early as possible. On the other hand, [Rule 8 of the Federal Rules of Civil Procedure] does not require plaintiffs to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint. Thus, a court must determine whether the facts actually alleged clearly establish a qualified immunity defense. If not, courts have a variety of ways to protect defendants from unnecessary litigation, such as requiring a more definite statement of the claim, a reply to an answer, or summary judgment briefing." *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011) (cleaned up) (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)); *see Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[b]ecause an immunity defense usually depends on the facts of the case, dismissal at the pleading

stage is inappropriate"). Because of the contested validity of the warrant (discussed in greater detail below), and because the facts alleged do not "clearly establish" a qualified immunity defense, the Court hesitates to extend the admittedly important protections afforded by that doctrine to Defendant Officers at this relatively early stage of the case. Accordingly, the motion to dismiss based on qualified immunity is denied without prejudice to revisiting the issue once the factual record is more fully developed.

Second, Defendant Officers ask this Court to consider the officers' body-worn camera (BWC) footage in evaluating their motion to dismiss. (Dkt. 37 at 2-4.) Defendants argue that, because the BWC footage is "referenced in the allegations," the Court can consider it. (*Id.* at 3.) But, even if the Court may consider it, Defendant Officers overstate how Plaintiffs reference the videos in the complaint. Plaintiffs allege that the officers either were not wearing BWCs or did not record the entire incident. Specifically, Plaintiffs allege that:

> None of the officers [who] entered plaintiffs' apartment were wearing body worn cameras (BWCs), except for one officer who entered the apartment far too late to capture officers' entry when they pointed guns at plaintiffs. Three other officers on the scene wore BWCs. However, at least two of the four total officers with BWCs turned them on too late to capture key events, and all four of them turned their cameras off too soon. The footage from each BWC ranges from approximately 5 – 20 minutes in length and captures only a small portion of the events. All of these actions were in violation of the BWC mandate in CPD Special Order SO3-14. (Dkt. 27 ¶ 9.)

The Court does not find that the contents of the BWC videos are "central to [Plaintiffs'] claim[s]." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Moreover, when viewed in the light of the Seventh Circuit's caution that "video may not tell the whole story and reasonable people can sometimes draw different conclusions from the same video," *Felton v. City of Chi.*, 827 F.3d 632, 637 (7th Cir. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)), the fact that the video does not capture all of Defendant Officers' actions compels the Court to find the BWC footage insufficient to refute Plaintiffs' claims at the motion-to-dismiss stage.

### A. Count I – §1983 *Monell* Claim (Against Defendant City of Chicago)

In Count I, Plaintiff Lillie Savage alleges that "Defendant officers' use of excessive force against Lillie was directly and proximately caused by one or more of the following four, specific, long-standing, interrelated, failures of official policy, lack

of official policy, and de facto policies, widespread practices, and/or customs of the City of Chicago: 1) a pattern and practice of using unnecessary or excessive force against citizens, including children and youth; 2) a failure to have any policy about when it is appropriate for officers to draw their guns and point them at citizens, including children; 3) a systemic failure to investigate and discipline and/or otherwise correct allegations/incidents of officer excessive force against citizens, including children and youth and/or their close relatives in the minors' presence; and 4) an absence of official policy and training for officers to refrain from pointing guns at or otherwise using excessive or unnecessary force against or in the presence of children. Each of these policies existed for more than six years prior to February 26, 2020 ('the *Monell* period') and was the moving force behind the officers' conduct that resulted in the violation of Lillie's constitutional rights and the direct causal link between the City's actions/inaction and the deprivation of her rights." (Dkt. 27 ¶ 104.)

The Supreme Court has made clear that "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability. . . . The Seventh Circuit has interpreted this mandate to allow 'conclusory' *Monell* complaints to survive motions to dismiss when they are 'sufficient to put the [local governing body] on notice of [plaintiff's] claim against it' and if the plaintiff gives the defendant 'notice of the crux of the plaintiff's charges' and does not '[leave] out facts necessary to give the defendants a complete understanding of the claims made against them.'" *Howard v. Sheriff of Cook Cty.*, No. 15 C 9384, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (quoting *McCormick v. City of Chi.*, 230 F.3d 319, 323 (7th Cir. 2000)); *see also Horton v. Guzman*, No. 16 C 741, 2017 WL 1233028, at *5 (N.D. Ill. Apr. 4, 2017). To withstand a motion to dismiss on a *Monell* claim, Plaintiff must "'plead factual content that allows the court to draw the reasonable inference that the [local governing body] maintained a policy, custom, or practice,' or a lack thereof that caused the constitutional violations alleged." *Howard v. Sheriff of Cook Cty.*, No. 15 C 9384, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (quoting *McCauley v. City of Chi.*, 671 F. 3d 611, 616 (7th Cir. 2011)).

Plaintiffs pleaded their *Monell* claim with sufficient specificity to put the City on "notice of the crux of [Plaintiffs'] charges." *McCormick*, 230 F.3d at 325; *see Archie v. City of Chi.*, No. 19 CV 4838, 2020 WL 5751185, at *3 (N.D. Ill. Sept. 25, 2020) (denying motion to dismiss similarly-alleged *Monell* claim). Plaintiffs articulate policy failures, areas in which policies are allegedly lacking, *de facto* policies, and "widespread practices" that "directly and proximately caused" Defendant Officers' use of excessive force against Plaintiff Savage. (Dkt. 27 ¶ 104.) The 31 paragraphs in Plaintiffs' Count I describe the "crux" of Plaintiffs' *Monell* claim in detail. Accordingly, Defendant City of Chicago's motion to dismiss Count I is denied.

4

**B.      Counts II, III, and IV – § 1983 Invalid Warrant (Count II), § 1983 Unreasonable Manner of Entry/Search (Count III), and § 1983 Seizure (Count IV)**

In Counts II, III, and IV, Plaintiffs bring a series of § 1983 claims arising out of Defendant Officers' alleged misconduct.

- In Count II, Plaintiffs allege that Officer Hammermeister, Sergeant Fraction, Lieutenant Folino, and "any other defendant officers known and unknown who participated in obtaining the search warrant for their apartment" "unreasonably and recklessly approved, obtained and executed a search warrant for a person who, officers knew or should have known, had no connection with plaintiffs' address, a fact which invalidated the warrant from the start, prior to execution." (Dkt. 27 ¶¶ 135-36.)

- In Count III, Plaintiffs allege that "[t]he manner in which officers conducted their entry into and search of plaintiffs' apartment was objectively unreasonable, in violation of Plaintiffs' Fourth Amendment rights." (*Id.* ¶ 151.)

- In Count IV, Plaintiffs allege that Defendant officers Cintron, Cozma, Johnson, Sergeant Jefferson, Ward, Phillips, and Sergeant Fraction "unnecessarily or willfully" "damaged or destroyed [Plaintiff Lyons's] doors, door paneling, microwave and other personal property when they forcibly entered her residence." (*Id.* ¶¶ 160-61.)

Plaintiffs have adequately pleaded their § 1983 claims. As already noted, many of Defendants' arguments are better reserved for after the factual record has been better developed. It is, for example, an open factual question whether the officers had a duty to investigate the accuracy of the information they received from their Confidential Informant about "Blondie's" purported drug sales out of Plaintiffs' home, including whether "Blondie" had any connection to that apartment or its residents. "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). It is true that "[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause," but an exception to that general rule exists where "the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). Because of the fact-specific nature of the inquiry, "the vast majority of cases dealing with the issue of a police officer's duty to conduct further investigation are decided on

summary judgment or after a trial." *Evans v. Gasca*, No. 14-CV-10518, 2016 WL 1407695, at *8 (N.D. Ill. Apr. 11, 2016).

In their motion, Defendant Officers attempt to disaggregate the component parts of Plaintiffs' unreasonable-manner-of-entry-and-search claim (Count III). (Dkt. 37 at 8-9.) But much § 1983 analysis in the Fourth Amendment context turns on the "totality of the circumstances." *See, e.g.*, *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997) ("Due to the fact-specific nature of the inquiry, the determination whether a police officer utilized excessive force depends on the totality of the circumstances surrounding the encounter."). Accordingly, the Court will not treat the various parts of Plaintiffs' Count III individually at this juncture.

### C. Counts V, VI, and VII – State-Law Assault (Count V), Intentional Infliction of Emotional Distress (IIED) (Count VI), and Trespass (Count VII)

Plaintiffs also assert a series of state-law claims. In Count V, Plaintiffs bring a state-law assault claim. In Illinois, assault involves "intentional conduct that places the plaintiff in reasonable apprehension of an imminent battery." *Wagner v. Cook Cty. Sheriff's Off.*, 453 F. Supp. 3d 1101, 1102 (N.D. Ill. 2020) (quoting *Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at *8 (N.D. Ill. July 25, 2011)). In their complaint, Plaintiffs allege that "[t]he actions of the defendant officers set forth [in the Complaint], including pointing guns at close range at the plaintiffs, created reasonable apprehensions in plaintiffs of immediate, unauthorized, and harmful contact to plaintiffs' persons." (Dkt. 27 ¶ 167.)

In Count VI, Plaintiffs bring a state-law intentional infliction of emotional distress (IIED) claim. In Illinois, the following elements are required to state a claim for the tort of intentional infliction of emotional distress: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress or knowledge that there is a high probability of causing severe emotional distress; and (3) the conduct actually caused severe emotional distress." *Mazurek v. Cook Cty.*, No. 02 C 4897, 2003 WL 21266712, at *3 (N.D. Ill. May 30, 2003) (quoting *Doe v. Calumet City,* 641 N.E.2d 498, 506 (Ill. 1994)). In their complaint, Plaintiffs allege that the "Officers' actions, omissions and conduct above were undertaken with the intent to inflict and cause severe emotional distress to plaintiffs, with the knowledge of the high probability that their conduct would cause such distress, or in reckless disregard of the probability that their actions would cause such distress." (Dkt. 27 ¶ 175.)

Finally, in Count VII, Plaintiffs bring a state-law trespass claim. In Illinois, "trespass is an intentional invasion of the exclusive possession and physical condition of land." *Quinones v. Tentler*, No. 00 C 5294, 2001 WL 681274, at *3 (N.D. Ill. Apr.

18, 2001) (citing *Dietz v. Illinois Bell Tel. Co.,* 507 N.E.2d 24 (Ill. App. Ct. 1987)). "The validity of [a] search warrant is . . . central to the viability of the state law claim for trespass." *Caldwell v. City of Chi.*, No. 08 C 710, 2010 WL 2722207, at *5 (N.D. Ill. July 8, 2010). In their complaint, Plaintiffs allege that "[b]y obtaining and executing a search warrant when they did not actually have probable cause to believe that drugs were being sold from plaintiffs' apartment, officer Hammermeister and other defendant officers were not lawfully authorized to enter upon the premises and, thus, they physically invaded plaintiffs' right to and enjoyment of exclusive possession of their residence." (Dkt. 27 ¶ 201.) In the alternative, Plaintiffs allege that "the conduct of defendants was willful and wanton and constituted a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others and/or their property." (*Id.* ¶ 202.)

Plaintiffs have adequately pleaded each of the three claims to survive Defendants' motion to dismiss. Defendants' arguments to the contrary on Counts V and VII rest in part on the contested legality of the search warrant, which the Court will not address at the motion-to-dismiss stage. *Evans*, 2016 WL 1407695, at *8. Accordingly, the motions to dismiss those claims are denied.

## III.   Conclusion

For these reasons, Defendants' motions to dismiss (Dkts. 37, 40) are denied.

SO ORDERED in No. 20-cv-03412.

Date: September 30, 2021

_____

JOHN F. KNESS
United States District Judge