IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHARON LYONS *et al.*,

    Plaintiffs,

        v.

CITY OF CHICAGO *et al.*,

    Defendants.

No. 20-cv-03412

Judge John F. Kness

## MEMORANDUM OPINION & ORDER

Presently before the Court is Defendant City of Chicago's motion to bifurcate Minor-Plaintiff L.S.'s *Monell* claim against the City from the remaining claims against the Chicago Police Department Officers and stay discovery and trial on the *Monell* claim pending resolution of the claims against the Defendant Officers. (Dkt. 96.) For the following reasons, Defendant City's motion to bifurcate and stay discovery and trial on the *Monell* claim is granted.

## I.    BACKGROUND

Plaintiffs Sharon Lyons, Julius Terry, and L.S., a minor child represented by Lyons, brought this lawsuit against the City of Chicago and twelve Chicago Police Department officers for claims arising out of an allegedly unlawful execution of a drug-related search warrant. (Dkt. 27.) On February 26, 2020, Defendant Officer Hammermeister obtained two search warrants authorizing a search for cocaine and heroin in the first and second floor apartments at 4937 South Justice Avenue.

(*Id.* ¶ 37.) The search warrants were based on information from a confidential informant that an individual named "Blondie" was selling drugs out of the apartments. (*Id.* ¶ 38.) That night, approximately eleven Defendant Officers executed the search warrant at the second-floor apartment where Lyons and Terry resided. (*Id.* ¶¶ 2–3, 16–17.) The officers entered through the front door with their guns drawn and performed a sweep of the apartment, including in Lyons's bedroom where L.S. was napping. (*Id.* ¶¶ 18, 52–56, 58.) Multiple officers entered the bedroom and pointed their guns at L.S. before bringing her to Lyons in the kitchen. (*Id.* ¶¶ 63, 68.) Defendant Officers then completed a search of the apartment but did not discover any drugs or Blondie, and no arrests were made. (*Id.* ¶¶ 74–75.)

On September 18, 2020, Plaintiffs filed their Amended Complaint alleging claims against Defendant Officers under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and various state law claims (Counts II through IX). (*Id.* at 30–40.) In addition, L.S. brought a *Monell* claim against the City alleging that certain policies, practices, and/or customs of the City caused her constitutional injuries. (*Id.* ¶¶ 103–134.). Specifically, L.S., who is black, claims that the Defendant Officers' conduct, including pointing guns at L.S., was undertaken pursuant to the City's widespread pattern and practice or de facto policy of excessive force against and/or in the presence of children of color, which proximately caused the violation of her Fourth and Fourteenth Amendment rights. (*Id.* ¶¶ 104, 125, 130.)

Defendant City moved to bifurcate for trial Plaintiffs' claims against the Defendant Officers from L.S.'s *Monell* claim against the City and stay discovery and

trial on the *Monell* claim. (Dkt. 96.) Plaintiffs oppose Defendant City's motion to bifurcate. (Dkt. 104.) On January 9, 2023, the Court held oral argument on the motion. (Dkt. 114.)

## II. LEGAL STANDARD

Rule 42(b) of the Federal Rules of Civil Procedure governs bifurcation of claims. "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). As the Seventh Circuit has held, if even "one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *see also Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (Courts "must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party."). Whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

## III. DISCUSSION

### A. The Parties' Arguments

Defendant City first asserts that bifurcation will prevent prejudice to all Defendants. (Dkt. 96 at 11–13.) Defendant Officers say they would be prejudiced by a joint trial because "[i]ntroducing evidence relating to [L.S.]'s *Monell* claim . . . invites jurors to find the individual defendant officers guilty by association, rather

than deciding liability based on their own actions." (*Id.* at 11–12.); *see Lopez v. City of Chicago*, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). Bifurcation would also avoid substantial prejudice to the City because, the City urges, if "the allegations against the [Defendant Officers] are proven at trial, the jury may hold the City liable on the *Monell* claim merely because it is appalled by the officers' conduct, thereby improperly converting the *Monell* claim into a *respondeat superior* claim." (Dkt. 96 at 12.); *see Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. Oct. 16, 2019) (Bifurcation is appropriate because of the risk that "*Monell* would devolve into a *respondeat superior* claim."). Prejudice to the Plaintiffs will also be prevented because bifurcation will lead to earlier disposition of Plaintiffs' individual claims. (Dkt. 96 at 13.); *see Clarett v. Suroviak*, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2021) (Earlier disposition of individual claims is likely because "bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant . . . time, effort, [and] cost.").

Defendant City further argues that bifurcation promotes judicial economy because, generally, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation by an officer. (Dkt. 96 at 8.) Applying that rule, Defendant City says that if L.S. is "unsuccessful in [her] claim[] against the individual defendants, [she] will no longer have a cause of action against

the city." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) ("A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference and causation come into play."). Consequently, any *Monell* discovery—which the City contends is extensive—should not commence before Defendant Officers are found liable. (*Id.* at 8–11.)

Finally, Defendant City notes that, "if any Defendant Officers are found liable for a constitutional violation, the City will consent to entry of judgment against it for the damages caused by the violation and reasonable attorney fees without requiring Plaintiff to prove § 1983 municipal liability . . . thereby avoiding litigation of the *Monell* claim altogether." (*Id.* at 13–14.) Litigation of L.S.'s *Monell* claim and the corresponding discovery is thus unnecessary.

Plaintiffs disagree with Defendant City's prejudice and efficiency arguments. Plaintiffs contend that the balance of prejudice weighs against bifurcation because any so-called "*Monell* evidence" is likely to be "admissible against the Officers even if there were no *Monell* claim," and likewise, "a large portion of evidence of Officers' individual liability . . . will be admissible against the City on [L.S.]'s *Monell* claim." (Dkt. 104 at 13–14.) Furthermore, it is "wholly premature and speculative" at this stage "to predict the evidence that the parties might offer at trial and to weigh the potential prejudice posed by that evidence." (*Id.* at 14.) Regardless, Plaintiffs argue that any prejudice to the Defendants at trial can be managed by motions *in limine* and limiting instructions. (*Id.*); *see Mendez v. City of Chicago*, 2020 WL 1479081, at

*5 (N.D. Ill. Mar. 26, 2020) ("The best way to stave off Defendants' prejudice concern is to use motions *in limine* and limiting instructions at trial to make sure the jury understands the distinctions between the claims against the Defendant Officers and the City."). If anything, Plaintiffs say L.S. would be prejudiced because "bifurcation would both delay final resolution of her *Monell* claim and drive up the cost of litigating that claim." (Dkt. 104 at 15.)

Plaintiffs also contend that bifurcation would not promote efficiency. Plaintiffs assert that L.S. is not required to prevail against Defendant Officers to prevail on her *Monell* claim because *Thomas v. Cook County Sheriff's Department* created an exception to the general rule that municipal liability is contingent upon officer liability. 604 F.3d 293, 305 (7th Cir. 2009). In *Thomas*, the Seventh Circuit explained that "a municipality can be held liable under *Monell* even when its officers are not unless such a finding would create an *inconsistent* verdict." *Id.*; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (A "verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Applying *Thomas*, Plaintiffs argue that "the City's liability does not depend on the Officers' liability because [L.S.]'s *Monell* claim is predicated on a Fourth Amendment excessive force violation and Plaintiffs have not brought a Fourth Amendment excessive force claim against the Officers." (Dkt. 104 at 6.) This means that even if "Plaintiffs were to lose on all of their claims against the Officers, that would not necessarily preclude [L.S.] from pursuing her *Monell* claim against the City." (*Id.* at 6–7.) Moreover, the majority of relevant discovery—five of

6

the six years in the *Monell* period—has already been prepared by the City in responding to two nearly identical cases in the Northern District of Illinois. (*Id.* at 7–8.) *See Mendez*, 2020 WL 1479081; *Tate v. City of Chicago*, 2019 WL 2173802 (N.D. Ill. May 20, 2019). So, any additional *Monell* discovery is minimal and should not be delayed.

Finally, Plaintiffs say Defendant City's proposed consent to entry of judgment does not alleviate the need for a *Monell* trial. Relying on *Swanigan*, 775 F.3d at 959–62, Plaintiffs say the proposal is procedurally improper because it is not an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure, as it does not provide L.S. with the non-economic relief she seeks, namely, a judgment that holds Defendant City publicly "accountable for systemic practices that cause constitutional harm" and "deter[s] future misconduct." (Dkt. 104 at 15–16.) Nor is the proposed consent a stipulation under Rule 16 of the Federal Rules of Civil Procedure "because it does not stipulate to any facts and because Plaintiff emphatically rejects it." (*Id.* at 16.)

## B. Analysis: Bifurcation is Warranted

A district court has broad discretion to bifurcate claims for trial. *Real*, 195 F.R.D. at 620 (whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis"). For the following reasons, the Court bifurcates Plaintiffs' *Monell* claim for discovery and trial.

First, the risk of unfair prejudice to Defendants justifies bifurcation. Plaintiffs seek to prove that Defendant City's de facto policy of using excessive force against and/or in the presence of children of color caused L.S.'s constitutional injury. To

support this claim, Plaintiffs seek discovery on all allegations against Chicago police officers from 2014 to 2020 of illegal searches in which a child was present for the search and some forced was used. (Dkt. 96 at 4–5; Dkt. 104 at 7–8.) When presented with six years of excessive force complaints against other children, it is possible, perhaps probable, that a jury would, by association, impermissibly hold the Defendant Officers accountable by association. *Bradford*, 2019 WL 5208852, at *3 (Bifurcation warranted because introducing six years of evidence concerning violations by other city officials is "wholly unrelated to the Individual Defendants' conduct on the single day at issue in the case against them."). Plaintiffs contend bifurcation would not alleviate this risk of prejudice because "a large portion of the so-called *Monell* evidence" would be admissible against Defendant Officers even if there were no *Monell* claim. (Dkt. 104 at 13–14.) Plaintiffs, however, fail to explain how department-wide allegations of excessive force against children will be admissible against the individual Defendant Officers, who are accused of violating the rights of L.S during a single search.

Moreover, bifurcation prevents prejudice to Defendant City. Plaintiffs assert a *respondeat superior* claim against the Defendant Officers. This means that the jury must assess evidence regarding the individual Officers' misconduct and City policy, which risks that "*Monell* would devolve into *a respondeat superior* claim." *Bradford*, 2019 WL 5208852, at *4; *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of *employees* of the municipality.' "

(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986))). Bifurcation avoids this risk entirely.

Plaintiffs contend that any risk of prejudice can be ameliorated through motions *in limine* and limiting instructions. Although it is undisputed that "limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them," *McLaughlin v. State Farm Mut. Ins. Co.*, 30 F.3d 861, 870–71 (7th Cir. 1994), there are limits to that rule. *See, e.g.*, *United States v. Chaparro*, 956 F.3d 462, 482 (7th Cir. 2020) (noting that, although the usual view is that "limiting instructions cure everything," the Seventh Circuit has "made clear" that "this presumption is rebuttable") (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 834 (7th Cir. 2016)). Because of the potentially inflammatory evidence regarding excessive force against minors and the nuanced difference between *Monell* and *respondeat superior* liability, this case presents one of those perhaps-rare occasions where, in the Court's view, limiting instructions are insufficient to ameliorate the potential prejudice to Defendants.

Because one of Rule 42(b)'s criteria for bifurcation—avoidance of prejudice—is satisfied, the Court is not obligated to address judicial economy and efficiency. *See Chlopek*, 499 F.3d at 700 (If "one of [Rule 42(b)'s] criteria is met, the district court may order bifurcation . . . ."). But addressing these considerations briefly, the Court finds that both Plaintiffs and Defendants have persuasive arguments. *Monell* discovery is notoriously burdensome and costly. *See Williams v. City of Chicago*, 315

9

F. Supp. 3d 1060, 1080 (N.D. Ill. 2018) (Willingness to bifurcate comes from recognition that "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.") (cleaned up). But five of six years of the requested *Monell* data has already been compiled by Defendant City, which significantly reduces the burden of discovery. And although bifurcation will allow for a more efficient resolution of the claims against the Defendant Officers, it also delays resolution of the *Monell* claim against Defendant City and requires two separate trials. In the end, however, if judicial economy and efficiency entirely favored Plaintiffs—which it does not—the Court would still find that the avoidance of prejudice justifies bifurcation.

Bifurcation is not permissible in any event if it would unfairly prejudice Plaintiffs. *Chlopek*, 499 F.3d at 700. There is, however, no unfair prejudice apparent to the Court. Plaintiffs contend that their "strong non-economic interest in police accountability and positive institutional reform" requires putting Defendant City on trial publicly (Dkt. 104 at 16–17), but nothing about today's decision will frustrate that goal. Plaintiffs will still have the opportunity to present their *Monell* evidence, but that opportunity will consist of a second, later trial. And although bifurcation might require Plaintiffs to expend additional resources in preparing for two separate trials, that cost is both justified for the reasons provided above and, to a lesser extent, incident to Plaintiffs' choice to bring a *Monell* claim in this action.

Finally, the parties disagree whether the Defendant City's liability depends on

10

the Defendant Officers' liability. Although determining whether *Heller* or *Thomas* provides the applicable rule might influence the Court's efficiency analysis, it would not alleviate the Court's concern with prejudice to the Defendants, which is the overarching justification for bifurcation. Moreover, *Thomas* addressed whether a municipality could ever be held liable under *Monell* when individual defendants were found not liable for the underlying episode—not whether that liability should be established in a single trial or separately. *See Thomas*, 604 F.3d at 305. Regardless, the *Heller*-or-*Thomas* issue can be revisited after the Defendant Officers' potential liability is resolved at the first trial.[1]

Without deciding the issue, the Court notes that *Heller* likely governs because *Thomas* created a *narrow* exception to the rule that municipal liability is contingent on officer liability. *Thomas* only applies when the *Monell* claim is "factually distinct" from the claims against the individual officers. *Swanigan*, 775 F.3d at 962. The *Monell* claim here, premised on the Defendant Officers' use of excessive force, is not factually distinct from the remaining claims. Although Plaintiffs do not bring a separate excessive force claim against the Defendant Officers, they do allege that the Officers conducted an unlawful search by "pointing guns at Sharon, 3-year-old [L.S.] and autistic Julius." (Dkt. 27 ¶ 153.) In addition, Plaintiffs' state law assault claim alleges that the Defendant Officers used "excessive" force by "pointing guns at close range at the plaintiffs." (*Id.* ¶ 167.) The jury will be required to make an "excessive

---

[1] Likewise, the issue regarding Defendant City's proposed consent to entry of judgment can be revisited after the first trial on the claims against the Defendant Officers because the issue would be mooted if the Defendant Officers are found not liable.

force" determination in the Officers' trial even though there is no independent claim for excessive force.[2] Bifurcation and a stay of discovery is thus warranted. *Swanigan*, 775 F.3d at 962 (When *Heller* applies, "the judge's decision to stay the *Monell* claim . . . was sensible, especially in light of the volume of civil-rights litigation that district courts must manage.").

For these reasons, bifurcation for trial of L.S.'s *Monell* claim from Plaintiffs' remaining claims and a stay of discovery on the *Monell* claim is justified.

## IV. CONCLUSION

Defendant City of Chicago's motion to bifurcate and to stay discovery and trial on Plaintiff L.S.'s *Monell* claim (Dkt. 96) is granted.

SO ORDERED in 20-cv-03412.

Date: March 7, 2023

_____
JOHN F. KNESS
United States District Judge

---

[2] Even if the jury is not required to make an excessive force finding in conjunction with any of the other claims brought against the Officer Defendants, this would not preclude bifurcation. *See Tate v. City of Chicago*, 2021 WL 4400982, at *2 (N.D. Ill. Sept. 27, 2021). As Judge Durkin explained, a "special interrogatory [can be given] to the jury asking for findings on whether any of the individual defendants used excessive force," but because "Plaintiffs have not brought an excessive force claim against any of the individual officers, the Court would not enter judgment against any of them on the jury's excessive force finding. Rather, that finding would pertain only to the claim against the City." *Id.*

12